335 P.2d 893

HOMEFINDERS, a co-partnership consisting of E. E. Rutledge and E. N. Eichhorn, Plaintiff-Respondent,

v.

John R. LAWRENCE and Ida H. Lawrence, husband and wife, Defendants-Appellants.

No. 8655.

Supreme Court of Idaho.

Feb. 16, 1959.

W. A. Johnston, Boise, for appellants.

Fredricks & Roberts, Boise, for respondent.

SMITH, Justice.

Respondent partnership was licensed as a real estate broker pursuant to I.C., §§ 54–2028 and 54–2030. The broker's license was issued to E. E. Rutledge, the active partner, E. N. Eichhorn being inactive.

January 10, 1954, appellants, desirous of exchanging their acreage for a business property, orally employed respondent to locate such a property. During the latter part of January, 1954, respondent located an apartment property. Appellant and wife and the apartment owner and wife, each having inspected the property of the other, thereupon, February 4, 1954, signed a printed form of instrument filled in with typewritten and handwritten information (hereinafter sometimes referred to as the exchange contract), providing for the exchange of their respective properties. When

signed, the contract did not contain the descriptions of the real and personal properties contemplated to be exchanged. Respondent's salesman, a licensed real estate broker and a notary public, present when the parties signed the contract, later added the descriptions of the realty on the reverse side of the contract, and attached to it a form of acknowledgment of the parties. The contract contemplated delivery of deeds of conveyance, bills of sale, and other instruments, and completion of title matters, to close the transaction within 30 days.

Appellant and the apartment owner, contemporaneously with the execution of the contract, each signed a printed form of rider, with the blanks thereof filled in, attached to and a part of the form of contract. The content of each rider is identical except for the respective sums stated. The one signed by appellant reads:

"I hereby ratify and confirm the employment of Homefinders Real Estate, real estate broker, to procure a purchaser for my property above described and in consideration of services performed by said broker in negotiating and bringing about the foregoing sale, hereby agree to pay said broker forthwith a commission of $750.00 ($200.00 of which is hereinabove receipted for as earnest money deposited) to be paid in mo. installments.

"John R. Lawrence (Seal)"

Appellant and wife on the same date, February 4th, executed and delivered to respondent their promissory note for $200 payable in 30 days, as the earnest money referred to in the rider.

The following Monday, February 8th, appellant and wife refused to complete the exchange transaction, although the apartment owner was willing, ready and able to do so. Appellant and wife gave as their reason for not proceeding with the exchange, that they felt it was beyond their financial means, and they refused to pay respondent broker's commission. Respondent then commenced this action seeking to recover on its first cause of action $550 as the balance of the broker's commission and interest thereon (and other sums not involved on this appeal), and on its second cause of action $200 on the promissory note together with interest and attorneys fees, allegedly owing by appellants.

The trial court sitting without a jury, at the conclusion of a trial, made its findings of fact and conclusions of law; the court thereupon entered judgment in respondent's favor against appellants for the aforesaid principal sums on both causes of action and attorneys fees on the second cause of action, together with costs. Appellants have appealed from such judgment.

We group appellants' many assignments of error into five main categories, the treatment of which we deem requisite for disposition of this appeal.

First, appellants contend that respondent as a partnership has not legal capacity to sue. It is not necessary to decide this question since it appears that appellants did not timely raise it.

Appellants contend that their general demurrer raised the objection that respondent has not legal capacity to sue. Such objection is a ground of special demurrer, enumerated in I.C. § 5-607. If not appearing on the face of the complaint, the objection may be taken by answer, I.C., § 5-610. If no objection be taken either by demurrer or answer, "the defendant must be deemed to have waived the same excepting only the objection to the jurisdiction of the court, and the objection that the complaint does not state facts sufficient to constitute a cause of action", I.C., § 5-611. These provisions are contained in California's statute, Cal.C.C.P. §§ 430, 433 and 434.

This identical question was involved in Ginsberg Tile Co. v. Faraone, Cal.App., 274 P. 549, 550, wherein the partnership of Ginsberg Tile Co. alleged that at all times mentioned it was a co-partnership, composed of certain named individuals, as has respondent herein. In the California case, the defect that plaintiff had not legal capacity to sue was raised by special demurrer; therein the Court said, "* * * it is settled that, if plaintiffs do sue in their partnership name, the defendants must interpose their objections at the very outset

or they waive it." See also Valley Lumber & Mfg. Co. v. Driessel, 13 Idaho 662, 93 P. 765, 15 L.R.A., N.S., 299, 13 Ann.Cas. 63; Agricultural Extension Club v. M. Hirsch & Son, 39 Cal.App. 433, 179 P. 430; Danziger v. Peebler, 88 Cal.App.2d 307, 198 P.2d 719; Case v. Kadota Fig Ass'n of Producers, Cal.App., 207 P.2d 86; Thelen v. Thelen, 32 Idaho 755, 188 P. 40; Anthes v. Anthes, 21 Idaho 305, 121 P. 553. In Lobb v. Brown, Cal.App., 276 P. 583, 585, it is stated, "When the want of capacity is apparent from the face of the complaint, and objection thereto is not taken by demurrer, it is deemed waived."

In Valley Lumber & Mfg. Co. v. Driessel, supra, the contention of respondent that the question of appellant's legal capacity to sue is raised by general demurrer, is answered in this language:

"* * * the only ground stated in the demurrer was that the complaint did not state facts sufficient to constitute a cause of action. It therefore did not raise the question of the capacity of the respondent to sue," [13 Idaho 662, 93 P. 771]

See also MacLeod v. Stelle, 43 Idaho 64, 249 P. 254.

The said defect, if such it be, appears on the face of respondent's complaint, and not having been objected to by special demurrer, it is deemed waived by appellants.

■ Second, appellants contend that every partner in a real estate partnership must be licensed as a real estate broker by the state. Reference to the applicable law shows that such is not true.

I.C., § 54–2028 authorizes a real estate broker's license to be issued to a partnership. I.C., § 54–2030 requires a partnership, upon applying for a license, to file with the application a list of the names of its members and their addresses, and further provides:

> "* * * Every partnership in its application for a license shall designate and appoint one or more of its members * * * to submit an application for a broker's license. * * * No licenses shall be issued to any partnership * * * unless and until the persons * * * so designated by the partnership * * * shall submit to and pass the examination required by this act."

Admittedly Mr. Rutledge, the active partner of respondent, and Mr. Anderson, its agent in the transaction involved in this case, each possessed a broker's license.

■ Third, appellants contend that respondent may not recover a broker's commission since it did not have a written listing contract, but only oral employment, to find a purchaser of appellants' property, citing I.C., § 9–508, which reads:

> "No contract for the payment of any sum of money or thing of value, as and for a commission or reward for the finding or procuring by one person of a purchaser of real estate of another shall be valid unless the same shall be in writing, signed by the owner of such real estate, or his legal, appointed and duly qualified representative."

See also Weatherhead v. Cooney, 32 Idaho 127, 180 P. 760; Brace v. Johnson, 45 Idaho 327, 262 P. 148; Stone v. Bradshaw, 64 Idaho 152, 128 P.2d 844, so construing this statute.

■ Here, however, respondent's first cause of action is not dependent upon any contract meeting the requirements of I.C., § 9–508, obligating appellants to pay for respondent's services to be rendered in finding a purchaser; rather, respondent's action is predicated upon the promise of appellant John R. Lawrence to pay a broker's commission to respondent for its services rendered, evidenced by the rider hereinbefore set out, made after rendition of those services. Moreover, the later written instrument is presumptive evidence of a valid consideration, I.C., § 29–103, and the burden rested upon appellants to avoid the instrument, I.C., § 29–104.

■ Appellant Lawrence, by such written instrument, agreed to pay for respondent's services already rendered; it is unrelated to any oral contract to pay a commission for services yet to be performed. Simply stated, the action is predicated on the theory of respondent's rendition to ap-

pellants of past valuable services,—not services to be performed in the future,—and the latter's written promise to pay therefor. Such a written acknowledgment of services and promise to pay therefor are held to satisfy the requirement of the Statute of Frauds of like or similar import as I.C., § 9–508. Bagaeff v. Prokopik, 212 Mich. 265, 180 N.W. 427, 17 A.L.R. 1292; Muir v. Kane, 55 Wash. 131, 104 P. 153, 26 L.R.A., N.S., 519; Carrington v. Smithers, 26 Cal. App. 460, 147 P. 225; Park Falls State Bank v. Fordyce, 206 Wis. 628, 238 N.W. 516, 79 A.L.R. 1339.

The only difference in opinion disclosed by the decisions is whether a valid consideration supports the promise so as to render it enforceable, there being views expressed pro and con. See 8 Am.Jur., Brokers, § 163, p. 1081; 12 C.J.S. Brokers § 62 pp. 143–144; also Annotations 17 A.L.R. 1353, 1356 and 79 A.L.R. 1351, under the heading, "Moral obligation connected with contract within Statute of Frauds." We believe that the better reasoned decisions support the affirmative view. Those cases hold that a consideration, which will support a subsequent executory promise, may arise from an agreement which, prior to the promise, was unenforceable because of the Statute of Frauds, or may arise from the moral obligation of that agreement, or from the antecedent receipt thereunder of material benefit by the promisor. Such rule has received recognition by the appellate courts of California, Indiana, Iowa, Kansas, Maryland, Minnesota, Missouri, Nebraska, Pennsylvania and South Dakota. See Annotations 17 A.L.R. and 79 A.L.R., supra, also Anno. 17 A.L.R. 1327 citing cases which have adopted this "more liberal view." 12 C.J.S. § 62 p. 144, expresses the rule in the following language:

"The modern rule is that the statutes under consideration do not preclude the bringing of an action on an express written promise to pay for the past services of a broker, it being considered either that the writing satisfies the statute or that the statute is not applicable, there being no services to be performed, or authority to be exercised, by the broker after the making of the promise. A prior contract, unenforceable under the statute because resting in parol, is deemed a moral obligation which is a sufficient consideration for the subsequent written promise."

The Washington Supreme Court ruled upon a situation akin to that herein, in the oft-cited case of Muir v. Kane, 55 Wash. 131, 104 P. 153, 154, 26 L.R.A., N.S., 519. Therein it was urged, as do appellants here, that the contract for a broker's commission was void. Washington Laws 1905, c. 58, required, as similarly does I.C., § 9–508, broker's contracts to be in writing, otherwise they were void. Said the Washington Court:

"The appellants contend that the writing relied upon by the respondent is insufficient under the statute; that it is not an agreement authorizing the respondent to sell the real property described for compensation or commission, nor does it authorize or employ the respondent to sell real estate at all. * * * It is clear that this writing was not intended as an agreement authorizing the respondent to sell the real property mentioned. In fact it was executed after that service had been performed, and is an agreement in writing to pay a fixed sum for a past service, not a service to be performed in the future. The question for determination is its validity as a promise to pay for a past service. Looking to the instrument itself, there is nothing on its face that in any manner impugns its validity. It is a direct promise to pay a fixed sum of money for services rendered."

All of the foregoing conditions appear applicable in the case at bar, supported by the record. See Carrington v. Smithers, 26 Cal.App. 460, 147 P. 225; Richey v. Bolton, 18 Wash.2d 522, 140 P.2d 253; In re Rule's Estate, 25 Cal.2d 1, 152 P.2d 1003, 155 A.L.R. 1319; Hillman v. Koch, 92 Cal. App.2d 163, 206 P.2d 434; Webb v. McGowin, 27 Ala.App. 82, 168 So. 196; Chapin v. J. E. Bolles Iron & Wire Works, 213 Mich. 514, 182 N.W. 103; Park Falls State Bank v. Fordyce, 206 Wis. 628, 238 N.W. 516, 79 A.L.R. 1339; Elbinger v. Capitol & Teutonia Co., 208 Wis. 163, 242 N.W. 568; Annotation 8 A.L.R.2d 797.

Fourth, appellants next contend, since the contract of exchange cannot afford the basis for the enforcement of any right as between the exchanging parties because, as found by the trial court, since "the descriptions of the properties contained on the face of the aforesaid contract are fatally deficient and uncertain," that there was a failure of consideration for appellant's promise to pay the broker's commission. Such is not true for the commission contract recognized respondent's services as a broker performed "in negotiating and bringing about the foregoing sale" only. Nowhere does it appear that respondent was to negotiate a binding exchange contract between the parties, not does the evidence indicate that appellants displayed any desire or willingness, although they possessed the ability, to negotiate and enter into any such binding contract with the other exchanging party. Therefore, the principles enunciated in Frye v. Levanger, 76 Idaho 252, 281 P. 2d 134, 135, supported by a wealth of authorities, are applicable here; therein it is stated:

"* * * Plaintiff's contract [broker's commission contract] does not require him to negotiate a binding contract with the purchaser; it merely

requires him to find a buyer ready and willing to enter into a deal at stated price and terms, 'or such other terms and price as I may accept.' The defendant's pleadings show that the plaintiff fully complied with his contract. That being the case, he is entitled to his commission, though the preliminary contract * * * was unenforceable.

\* \* \* \* \* \*

"Under the circumstances, the defendant owner would have an equal, if not greater, responsibility in procuring the binding contract of sale."

█ Fifth, appellants next contend that respondent should not be allowed to recover because of having occupied a dual agency, acting for both exchanging parties in the transaction.

The record satisfactorily shows that respondent's commission arrangement with both parties was fully disclosed by the separate commission contracts; those contracts are appended, each as a filled in printed form, to the exchange contract which likewise is a filled in printed form, and the three instruments are included upon one sheet of paper. Each exchanging party executed his respective broker's commission contract. Appellants were furnished a duplicate of the fully executed instruments not later than February 8, 1954, after acceptance of their offer of exchange by the apartment owner. Appellants assigned the financial burden attendant to the exchange, as their only reason for not proceeding with it; at no time did they assign as a reason, the fact that respondent acted in such dual capacity.

In the early case of Synnott v. Shaughnessy, 2 Idaho 122, 7 P. 82, 89, the underlying principles, applicable in the case at bar, were enunciated as follows:

"It is laid down as the law that if an agent act openly, and with the consent of both owner and purchaser, he may contract for and receive a commission from both. [Citations.] And again, if the extent of the agency be merely to bring the parties together, and does not involve the duty of negotiating for either, the agent is termed a 'middle-man,' and may contract for and receive commissions from both. [Citations.] This is true also if each have agreed to pay the agent a commission, with or without the other's consent, if his duty is simply to bring the parties together. [Citations.]"

See also Clopton v. Meeves, 24 Idaho 293, 133 P. 907; Self v. Gilbert, 105 Okl. 140, 231 P. 870; Vickery v. Valdez, 113 Cal.App. 135, 298 P. 151; McConnell v. Cowan, 44 Cal.2d 805, 285 P.2d 261; 8 Am.Jur., Brokers, § 165, p. 1082; 12 C.J.S. Brokers § 74, p. 164; Annotation 14 A.L.R. 475; Annotation 80 A.L.R. 1081.

552

The findings and judgment of the trial court are supported by competent and substantial evidence, therefore they will not be disturbed on appeal. I.C., § 13–219; Condie v. Swainston, 62 Idaho 472, 112 P.2d 787; In Re Village of Riggins, 68 Idaho 547, 200 P.2d 1011; Parke v. Parke, 76 Idaho 168, 279 P.2d 631; Jordan v. Yoder, 77 Idaho 479, 295 P.2d 271; Shurrum v. Watts, 80 Idaho 44, 324 P.2d 380.

The judgment of the trial court is affirmed. Costs to respondent.

PORTER, C. J., and TAYLOR and McQUADE, JJ., concur.

KEETON, C. J., sat at the hearing but retired prior to decision.